DAVID EARL BROWN,            )
                              )
        Petitioner,       )
                              )
v.                          )     Nos.    1:12-CV-362-HSM
                              )             1:06-CR-78-HSM-CHS-1
UNITED STATES OF AMERICA,   )
                              )
        Respondent.    )

## MEMORANDUM OPINION

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 105]. The government filed its response [Doc. 109] and Petitioner filed a reply [Doc. 110]. During pendency of the petition, Petitioner has filed what the Court interprets to be two motions for leave to amend [Docs. 113, 117]. The Court granted leave with respect to the first request and ordered Respondent file a response [Doc. 115]. Respondent filed a memorandum in opposition to relation-back of the proposed claim on October 5, 2015 [Doc. 116]. The Court has yet to address Petitioner's second motion for leave to amend [Docs. 117, 118]. For the reasons stated below, Petitioner's second motion for leave to amend will be **GRANTED**; the amended § 2255 motion [Docs. 105, 118], however, will be **DISMISSED WITH PREJUDICE.**

## I.    BACKGROUND

In April 2006, Jason Helms reported that someone had stolen a Glock .40 caliber pistol and silver necklace from his home in Cleveland, Tennessee. *United States v. Brown*, 443 F. App'x 956, 957 (6th Cir. 2011). Helms suspected that an acquaintance, Petitioner, might be the culprit and relayed this suspicion to Detective Robert Harbison. *Id.* After learning Petitioner

was staying at his cousin's house and finding him sleeping on the couch there, Harbison woke Petitioner, identified himself, explained that the reason for his visit, and asked to speak with him. *Id.* at 957–58. Petitioner consented and the two men went outside, where Helms stood waiting. *Id.* at 958. Helms and Harbison explained that they did not "want [Petitioner] to go to jail," that Helms "just wanted his gun back" and that, if Petitioner "gave the gun to Helms, he could "go back inside and go to sleep." *Id.* Petitioner responded that he had traded the gun for methamphetamine in a neighboring county and "could get the gun back." *Id.* He refused, however, to divulge to whom he traded the gun or where it might be. *Id.*

Harbison took Petitioner to the police station for further questioning. *Id.* Once there, Harbison read, and Petitioner waived, his *Miranda* rights. *Id.* Petitioner gave a tape-recorded confession, saying he entered Helms' house and stole both the gun and necklace. *Id.* He again refused to disclose who had the gun, pleading only that he would get it back. *Id.* Several days later, Petitioner's mother called Harbison with a similar promise: She would get the gun and return it. *Id.* Neither individual ever returned the gun. *Id.*

In July 2006, a federal grand jury indicted Petitioner for possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g) [Doc. 1]. Detective Carl Maskew arrested Petitioner and brought him to the county jail, where he again administered Petitioner his *Miranda* rights. *Brown*, 443 F. App'x at 958. Petitioner agreed to speak with Maskew and signed another waiver form. *Id.* This time, however, Petitioner's story changed. *Id.* Despite initially claiming he knew nothing about the stolen gun, Petitioner made a mid-confession pivot: he explained he was confused as to which gun Harbison had been referring and claimed the gun he traded for methamphetamine was not Helms' .40 caliber Glock, but a .22 caliber Glock he received as payment for some landscaping work. *Id.* Minutes later he revised his story again,

claiming two other individuals took Helms's gun and gave it to him. *Id.* In all renditions, Petitioner admitted that he subsequently traded the gun for methamphetamine. *Id.*

The matter proceeded toward trial and petitioner moved to suppress both confessions as involuntary [Docs. 28, 29, 30]. The Court conducted an evidentiary hearing, reviewed the pleadings subsequently filed by the parties, and found the record "devoid of any indication whatsoever that [the officers] engaged in any sort of threatening or coercive behavior in their dealings with [Petitioner]" [Doc. 46 p. 12; Doc. 43]. It went on to explain that the evidence "suggest[ed] precisely the opposite—that both officers went to great lengths to make [Petitioner] feel comfortable in their questioning of him" [Doc. 46 p. 12]. The Court denied Petitioner's suppression motion accordingly [*Id.*].

On April 22, 2008, Petitioner proceeded to trial, and, at the close of the government's case-in-chief, moved for a judgment of acquittal alleging that his confessions had not been adequately corroborated [Doc. 78 pp. 35–36]. The Court declined the motion and the jury subsequently convicted Petitioner as charged [*Id.* at 38; Doc. 57]. Petitioner then filed a post-verdict motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) [Doc. 58; 59]. On December 4, 2008, this Court reversed its earlier ruling and granted Petitioner's motion, concluding the United States had failed to adequately corroborate Petitioner's confessions with independent evidence [Doc. 68]. The United States appealed, and, on August 24, 2010, the Sixth Circuit reversed the Court's order granting acquittal, reinstated Petitioner's conviction, and remanded for sentencing, having found that sufficient independent

evidence corroborated Petitioner's confessions and established his guilt. *United States v. Brown*, 617 F.3d 857 (6th Cir. 2010).[1]

In calculating Petitioner's guideline range under the 2009 edition of United States Sentencing Guidelines, the probation officer began with a base offense level of twenty-four due to Petitioner's multiple prior convictions for crimes of violence [PSR ¶ 12]. Two levels were added because the firearm was stolen, and another four levels were added because Petitioner possessed the weapon in connection with another felony—the burglary during which the firearm was stolen and exchange of the firearm for methamphetamine [*Id.* ¶¶ 13, 14]. The probation officer ultimately concluded Petitioner's three prior convictions for aggravated burglary qualified him as an armed career criminal under the Armed Career Criminal Act ("ACCA") subject to an enhanced offense level of 33 pursuant to section 4B1.4(b)(3)(B) [*Id.* ¶¶ 18, 21]. The foregoing combined with Petitioner's criminal history of V to yield an advisory range of 210-to-263 months, with a statutory mandatory minimum of fifteen years' imprisonment under § 924(e)(1). On November 29, 2010, the Court sentenced Petitioner to the statutorily mandated minimum fifteen year term [Doc. 92].

Petitioner appealed, challenging the voluntariness of his confessions and his classification as an armed career criminal. *Brown*, 443 F. App'x at 967 (6th Cir. 2011). The Sixth Circuit rejected both claims, affirming his conviction and sentence. *Id.* at 958–60. On November 2, 2012, Petitioner filed a timely petition pursuant to § 2255 [Doc. 105] and, on January 26, 2015,

---

[1]     After initially being released on bond pending appeal, Petitioner was ordered to report to the Bureau of Prisons no later than November 10, 2011 [Doc. 99]. He failed to do so and was charged with violating 18 U.S.C. §§ 3146(a)(2) and 401(3) in Case No. 1:11-cr-111 [Case No. 1:11-cr-111, Doc. 1]. He ultimately pleaded guilty to the violation, stipulating that he was aware of the date, time, and place where he was to report, but knowingly and intentionally failed to report because "he just wasn't ready to go" [Case No. 1:11-cr-111, Doc. 15 p. 3].

filed his first of two motions for leave to amend that petition [Doc. 113]. The court granted the latter on September 3, 2015 [Doc. 115]. Petitioner filed his second motion to amend on November 13, 2005 [Doc. 117], asserting a novel claim for relief based on the recent United States Supreme Court decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) [Doc. 118].

## II.  RELATION BACK OF AMENDED CLAIMS

### a.  Timeliness of Petitioner's January 26, 2015 Amendment

During pendency of this petition [Doc. 105], Petitioner filed what the Court interprets to be his first motion for leave to amend [Doc. 113]. While the Court granted leave on September 3, 2015, it was silent as to whether the proposed amendment was itself timely. Amended claims and defenses are subject to the same limitations period as the original motion, *Cameron v. United States*, No. 1:05-CV-264, 2012 U.S. Dist. LEXIS 48381, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. Dec. 14, 2001)). Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1).

A conviction becomes "final [for purposes of § 2255(f)] at the conclusion of direct review." *Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001) (quoting *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001)). Where a defendant pursues direct review through to a petition for certiorari in the United States Supreme Court, direct review concludes when the Supreme Court either denies the petition for certiorari or decides the case. *Clay v. United States*, 537 U.S. 522, 532 (2003). In alternative, when a defendant pursues a direct appeal but does not petition the United States Supreme Court for certiorari, his judgment becomes final when the time expires for filing such petition—90 days after entry of the intermediate appellate court's judgment. *Id.*; *see also* Supreme Court Rule 13(3) ("The time to

file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate.").

In light of the foregoing, Petitioner's judgment of conviction became final on January 30, 2012, 90 days after the Sixth Circuit's November 1, 2011 opinion affirming his sentence and conviction. The statute of limitations began to run on that date, expiring one year later on January 30, 2013. Failure to file the motion for leave to amend until January 26, 2015—well after expiration of the one-year limitations period—necessarily leads the Court to hold the proposed claim therein untimely under § 2255(f).

### 1. Equitable Tolling of the Statute of Limitations

Section 2255(f)'s statute of limitations is not jurisdictional and may be tolled under limited, extraordinary circumstances. *Dunlap v. United States*, 250 F.3d 101, 1007 (6lth Cir. 2001). Used sparingly, a petitioner bears the burden of establishing that equitable tolling applies to his case, *see Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), and must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *Hail v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011); *see also Jurado*, 337 F.3d at 643 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.").

After a thorough review of the petition and proposed amendment [Docs. 105, 113], the Court concludes Petitioner has failed to put forth extraordinary circumstances justifying his failure to comply with § 2255(f). *Compare Stovall v. United States*, No. 1:12-cv-377, 2013 U.S. Dist. LEXIS 12937, at *9 (E.D.T.N. Jan. 31, 2013) (rejecting request for equitable tolling where the petitioner failed to set forth any facts which suggested he had diligently pursued his rights),

*with Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (granting request for equitable tolling where the petitioner pled facts indicating he had been separated from his legal materials for extended period of time due to multiple detention transfers and an illness).  As such, the Court finds that the limitations period was not tolled.

### 2.      Relation Back Under Rule 15(c)

When an amendment is untimely, the Court looks to Rule 15(c) of the Federal Rules of Civil Procedure to determine whether the proposed claims "relate back" to a timely, original pleading and are thus saved from being time barred by expiration of the statute of limitations. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007).  An amended claim relates back if it "ar[i]se[s] out of the [same] conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2).  The Supreme Court has rejected a broad reading of "conduct, transaction, or occurrence" in the context of post-conviction relief and explained an amended petition will not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those [set forth in] the original pleading."  *Felix*, 545 U.S. at 650.  In other words, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Id.* at 658 (citations omitted).

Petitioner's proposed amendment appears to allege trial counsel in Case No. 1:11-cr-111—the separate criminal case in which he was charged under 18 U.S.C. §§ 3146(a)(2) and 401(3) for failing to report to the Bureau of Prisons on November 10, 2011—rendered constitutionally deficient assistance by failing to "research" the issue and object to Petitioner's plea-based conviction on the grounds that he lacked notice of the Sixth Circuit's opinion [Doc. 113].  Because such contention is wholly unrelated to the grounds challenging his conviction and

7

sentence in Case No. 1:06-cr-78, the proposed amendment lacks a common nucleus of operative fact with Petitioner's timely petition and fails accordingly. *See Howard v. United States*, 533 F.3d 472, 475–76 (6th Cir. 2008) (noting a § 2255 motion "will be denied where it is filed after [the limitation] period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Rule 15(c)").[2]

### b. Timeliness of Petitioner's November 13, 2015 Amendment

In addition to the one year statute of limitations under § 2255(f)(1), a renewed limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The Sixth Circuit decision in *In re Watkins* makes clear that claims based on the Supreme Court's opinion in *Johnson* satisfy

---

[2]      Even if the proposed amendment did relate back under Rule 15(c), the Court finds Petitioner's proposed ground for relief independently fails for lack of merit. He pleaded guilty to violation of § 3146(a)(2), stipulating that he was aware of the date, time, and place where he was to report, but knowingly and intentionally failed to report because "he just wasn't ready to go" [Case No. 1:11-cr-111, Doc. 15 p. 3]. Further, the magistrate judge conducted a thorough colloquy consistent with Federal Rule of Criminal Procedure 11, ultimately concluding Petitioner's plea was both voluntary and knowing [Case No. 1:11-cr-111, Doc. 16].

It is well established that "solemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and a petitioner is bound by such statements where the court has followed Rule 11 procedure, *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). The Court finds bald assertions to the contrary are insufficient to overcome the presumed veracity of Petitioner's sworn statements in open court. *See United States v. Socolovitch*, 340 F. App'x 291, 296 (6th Cir. 2009) (reasoning that, if the government alleged that a defendant was responsible for a certain amount of loss, the defendant would not enter a plea agreement stipulating that amount of loss unless he were actually guilty of at least that amount of loss). Because no legitimate basis existed for counsel to argue Petitioner lacked notice of the Sixth Circuit's opinion, he cannot be said to have rendered ineffective assistance by failing to do so. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("By definition, . . . counsel cannot be ineffective for a failure to raise an issue that lacks merit."); *Krist v. Folz*, 804 F.2d 944, 946–47 (6th Cir. 1986) ("An attorney is not require[d] to present a baseless defense or to create one that does not exist.").

8

---

this standard and thus trigger a renewed one-year statute of limitations running from the date of that decision, June 26, 2015. *See* No. 15-5038, slip op. at 9–10 (finding Johnson constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certifying a second petition). Petitioner's second proposed amendment [Docs. 117, 118]—which relies on *Johnson*'s invalidation of the ACCA residual clause as grounds for collateral relief—falls safely within the one-year period for filing a timely request. *See United States v. Mathur*, 685 F.3d 396, 404 (4th Cir. 2012) ("'[B]ecause of the interplay between [§§ 2255(h)(2) and 2255(f)(3)], an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law will be time barred except in the rare case in which the Court announces a new rule of constitutional law and makes it retroactive within one year.'" (quoting *Dodd v. United States*, 545 U.S. 353, 359–60 (2005)). Leave to file the proposed amendment is **GRANTED**.

## III. STANDARD OF REVIEW AND ANALYSIS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The amended petition sets forth five grounds of collateral attack, including: (1) prosecutorial misconduct in the form of failure to disclose material in contravention of *Brady v.*

*Maryland*, 373 U.S. 83 (1963) (Ground One) [Doc. 105 pp. 5–6; Doc. 105-1 pp. 4–5]; (2) impermissible use and admission of confessions derived in violation of *Miranda v. Arizona*, 443 F. App'x 956 (1966) (Ground Two) [Doc. 105 pp. 6–8; Doc. 105-1 pp. 5–8, 9–10]; (3) several theories of ineffective assistance of counsel (Ground Three) [Doc. 105 pp. 8–9; Doc. 105-1 pp. 8–9]; (4) improper admission of a gun case into evidence without ever addressing its admissibility at the suppression hearing (Ground Four) [Doc. 105 pp. 9–10]; and (5) improper categorization as an armed career criminal in light of the Supreme Court's decision in *Johnson v. United States* (Ground Five) [Doc. 117; Doc. 118 pp. 3–7]

> **A.     Ground One: Alleged *Brady* Violation**

Without much detail or elaboration, Petitioner appears to suggest that the prosecutor committed constitutionally prejudicial misconduct in two ways: (1) by allegedly failing to respond to Petitioner's August 7, 2006 request for preservation of discovery materials; and (2) by providing the jury with abridged recordings of his confession that "would not play all the way through, thus leaving out information that could have been helpful to Petitioner's defense" [Doc. 105 p. 5; Doc. 105-1 p. 5 (citing *United States v. Arnold*, 117 F.3d 1308 (11th Cir. 1997) for the proposition that a prosecutor violates *Brady v. Maryland* when he withholds exculpatory tapes of a witness)]. Noting "prosecutors have 'a duty to learn of any favorable evidence known to the others acting [on] the government's behalf'" [Doc. 110 p. 3 (quoting *Kyles v. Whitley*, 514 U.S. 419 (1995))], Petitioner argues failure to provide the jury with a full recording of his confession gave rise to constitutional infirmity [Doc. 105-1 p. 5; Doc. 110 pp. 3–4 (characterizing the full tape as "exculpatory" and suggesting failure to provide it to the jury was somehow misleading)].

The Court finds that this claim—which directly contradicts the factual record of events— lacks even a scintilla of merit. With regard to Petitioner's first theory, the record clearly reveals

that the government provided Petitioner with a "notice of production of discovery" on August 3, 2006 [Doc. 2], four days before Petitioner filed his request for "preservation and discovery materials" [Doc. 8]. The fact that Petitioner received discovery is evidenced by the fact that counsel filed a motion to suppress some of the evidence provided [Doc. 28]. The Court finds that clear evidence of government compliance with discovery in the record combined with Petitioner's inability to identify specific discovery materials not provided, render the claim deficient as a matter of law.

The second theory—alleging the government provided the jury with incomplete copies of Petitioner's recorded confession—lacks any factual basis in the record and as a result, the Court need not determine whether such an omission falls within the scope of *Brady*. While it is true that the government chose to only play excerpts of the confession in open court, the entire recording was introduced into evidence in an effort to preempt the "rule of completeness" [Doc. 56 (listing "audio recording of confession" as entered evidence)].[3] The fact that the jury had access to the full tape during deliberation precludes any finding of constitutional error.

In *Brady v. Maryland*, the United States Supreme Court held that prosecutorial suppression of evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of . . . good faith or bad faith." 373 U.S. at

---

[3]     The Sixth Circuit has explained that "the 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009). While it is up to the government to decide whether to introduce none of, limited portions of, or the entire recorded confession, *see* Fed. R. Evid. 801(d)(2) (listing opposing party admission as form of non-hearsay), a defendant's ability to introduce omitted portions of the same is limited to circumstances where the government's selected portions are misleading, s*ee United States v. Henderson*, 626 F.3d 326, 344 (6th Cir. 2010) (citing *Holden* for proposition that Rule 801(d)(2) does not extend to a defendant's introduction of his own out-of-court statements). Petitioner has failed to identify any misleading impression created by portions of the recording played in open court.

11

87.  This same duty to disclose applies in the absence of a request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Thus, while the term "*Brady* violation" is commonly misused to refer to any breach of the prosecution's broad obligation to disclose exculpatory evidence, failure to make such a disclosure really only violates *Brady*—resulting in constitutional infirmity—where the nondisclosure involved material evidence, i.e., was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.  *See id.* at 682 (noting evidence is material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different); *Kyles v. Whitley*, 514 U.S. at 433–34; *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  In other words, nondisclosure must result in prejudice to constitute an actual violation of the *Brady* progeny.  *Id.* at 282 (noting true violation of *Brady* has three components: (1) the evidence at issue must be favorable to the accused; (2) that evidence must have been suppressed by the State; and (3) prejudice must have ensued).

Petitioner's failure to identify a single piece of exculpatory information withheld by the government is fatal to his claim.  *See O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961 (finding conclusions "not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief"); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that if "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 motion is "legally insufficient to sustain review").  The Court finds Petitioner is not entitled to relief on the basis of Ground One.

**B.**     **Ground Two: Violation of *Miranda v. Arizona***

Petitioner's second ground of collateral attack argues the Court erred by not suppressing his confession based on the fact that: (1) Detective Harbison "failed to advise [him] of his . . . *Miranda* rights before eliciting statements" during their initial encounter [Doc. 105 p. p. 5–6 (arguing statements given outside his cousin's house were used by police to coerce the subsequent confessions)]; and (2) he was "high on injected drugs" at both the time of his arrest and subsequent interrogation at the police station [Doc. 105-1 pp. 5–8]. With regard to the second theory, Petitioner argues he was so "messed up" that "any reason[ably] minded person would find it hard to believe that [he] could have been in any better state of mind . . . [after being] read his *Miranda* rights" at the city detention facility [*Id.*].

With regard to the first theory, Petitioner has failed to point to: (1) facts suggesting his pre-arrest conversation with Detective Harbison constituted a custodial interrogation requiring Fifth Amendment warnings, *see United States v. Salvo*, 133 F.3d 943, 947 (6th Cir. 1998) ("The Miranda rule's application is limited to 'custodial interrogations,' which the Supreme Court has defined as, 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way.'" (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)); *Mathiason*, 429 U.S. at 495 ("Coercive environments not rising to the level of formal arrest . . . do not constitute custody within the meaning of *Miranda*."), or (2) any statement derived from that conversation used to coerce his later post-*Miranda* confessions, *see United States v. Sangineto-Miranda*, 859 F.2d 1501, 1517 (6th Cir. 1988) (citing *Or v. Elstad*, 470 U.S. 298, 317 (1985) for the proposition that "failure to administer *Miranda* Warnings, without more, does not automatically require suppression . . . so long as the uncounseled statement was given voluntarily); *see also Elstad*, 470 at 308 (explaining the foregoing rule "applies with equal force when the alleged 'fruit' of a non-coercive *Miranda*

13

violation is . . . the accused's own voluntary statement."). The Court finds that the absence of such assertions preclude Ground Three from stating a valid claim for collateral relief.

With regard to the second theory, Petitioner appears to have raised an identical issue on direct appeal. *See Brown*, 443 F. App'x at 958–59 (arguing the Court should have suppressed Petitioner's two post-*Miranda* confession based on the fact that he was under the influence of drugs during the first interrogation and statements derived from that discussion were used to obtain the second confession). The Sixth Circuit rejected this argument, explaining bald "speculation . . . d[id] not show clear error in [this Court's] determination that [Petitioner] knowingly and intelligently waived his *Miranda* rights." *Id.* at 959. It is well established that absent exceptional circumstances, such as an intervening change of law, a § 2255 motion cannot be used to relitigate issues decided on appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). Failure to identify any such circumstances in the current case necessarily preclude re-litigation of the claim.

### C.      Ground Three: Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

14

professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner articulates four theories of ineffective assistance, including counsel's alleged failure to: (1) respond to Petitioner's repeated requests for updates regarding the status of his case; (2) subpoena requested witnesses Petitioner claims "could have given testimony on [his] behalf;" (3) discuss and strategize about issues raised on appeal; and (4) object to government evidence at trial [Doc. 105 p. 8; Doc. 105-1 pp. 8–9; Doc. 110 pp. 2–3]. None of the theories successfully state a claim for collateral relief.

With regard to the first two theories, Petitioner appears to claim that he "tried [unsuccessfully] many times to contact his counsel by phone" [Doc. 105-1 p. 8 (claiming counsel refused to accept his calls)] and that the breakdown in communication gave rise to "conflict," ultimately resulting in counsel's "refus[al] to investigate or file subpoenas for [certain] alibi witnesses" [*Id.*]. Petitioner goes on to argue that the absence of those witnesses—who allegedly would have testified that they saw someone other than petitioner running from Helm's house on

15

the day of the alleged theft—resulted in prejudice [*Id.* (citing *Workman v. Tate*, 957 F.2d 1339 (6th Cir. 1992), for the proposition that "failure to call two witnesses who could have contradicted police officers' testimonies constituted ineffective assistance")].

Even if all of the foregoing allegations are accepted as true, Petitioner has failed to set forth facts demonstrating he was prejudiced by the absence of the relevant testimony or breakdown in communication which lead to such absence. Petitioner was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) [Doc. 57]. The jury reached this verdict based upon evidence introduced at trial, including confessions in which Petitioner gave two conflicting accounts about how he ultimately came to be in possession of a Glock firearm [Doc. 55; Doc. 78 pp. 24–28 (explaining Petitioner provided Detective Maskew with several different stories, all of which admit to possessing either a .22 of .40 caliber Glock firearm); Exhibits 8, 9]. "[D]efense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). Because the identity of the individual who stole the gun is irrelevant to the question of whether Petitioner eventually possessed it—a fact he admitted in all versions of his confession—counsel cannot be said to have erred by refusing to call witnesses willing to testify on that matter. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004) (noting the decision of whether to call a witness is presumed to be a matter of trial strategy and failure to do so only constitutes ineffective assistance when it deprives the defendant of a substantial defense).

Petitioner's fourth theory—failure to object the government's use of evidence [Doc. 105 p. 8]—appears to hinge on what he characterizes as a failure "to properly litigate [P]etitioner's issues at the suppression hearing and . . . trial" [Doc. 105-1 p. 8]. Without elaboration, Petitioner cites counsel's knowledge "that the first and second confessions were obtained in violation of

16

*Miranda*" [*Id.* at 9 (referencing fact that Petitioner was under the influence of drugs at the time of his initial arrest)].   Failure to "make[] [the] needed objections and fully address[] [Petitioner's] condition at the time of arrest and initial questioning" in turn amounted to degradation of counsel's representative obligations [*Id.* at 10].

A review of the record reveals counsel objected to government use of Petitioner's confession during both the suppression hearing [Doc. 28 (arguing for suppression of Petitioner's confession based on the presence of methamphetamine and morphine in his system at the time of his arrest); Doc. 39; Doc. 43; Doc. 44 (challenging confession on grounds that *Miranda* waiver was neither knowing nor voluntary)] and before the Sixth Circuit on appeal [Doc. 100].  Because counsel appears to have done exactly what Petitioner now claims he should have done— challenge admission of his confessions on the grounds that being under the influence of drugs rendered waiver of his *Miranda* rights unknowing and involuntary—Petitioner cannot show counsel deviated from professional norms on that basis.

Finally, the Court rejects any attempt to argue counsel improperly failed to file a petition for writ of certiorari with the United States Supreme Court. [Doc. 105 p. 13].  While the Sixth Amendment guarantees every criminal defendant access to a lawyer to assist with his or her defense at trial and on direct "first tier" appeal, *Halbert v. Michigan*, 545 U.S. 605 (2005), no such entitlement exists for discretionary appeals, *Ross v. Moffitt*, 417 U.S. 600, 617 (1974) ("[T]his Court has followed a consistent policy of denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari in this Court.").  Further, "where there is no constitutional right to counsel there can be no deprivation of effective assistance."  *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), *abrogated on other grounds by Martinez v.*

17

*Ryan*, 132 S. Ct. 1309, 1315 (2012)). Petitioner's claim fails accordingly. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (holding that because the defendant had no constitutional right to the assistance of counsel in pursuit of state supreme court certiorari, "he could not be deprived of the effective assistance . . . by . . . counsel's failure to file the certiorari application").

### D.      Ground Four: Improper Admission of Gun Case at Trial

The Court finds Petitioner has procedurally defaulted his fourth and final ground for collateral relief—suggesting the Court erred by admitting Helm's gun case at trial when it had not been introduced as evidence during the earlier suppression hearing [Doc. 105 p. 9; 105-1 p, 5]. *Compare Shropshire v. United States*, No. 1:08-CV-261, 2011 U.S. Dist. LEXIS 103765, at *37 (E.D. Tenn. Sept. 13, 2011) (explaining that a § 2255 motion is not a substitute for properly raising issues on direct appeal and failure to do so subjects a claim to procedural default), *with United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010) (explaining ineffective assistance claims are properly raised for the first time in a collateral proceeding). "In the case where the [Petitioner] has failed to assert his claims on direct appeal[,] . . . in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *accord United States v. Frady*, 456 U.S. 152, 167–68 (1982). The "hurdle" to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attacks generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

While it is true that ineffective assistance of counsel during the appeal process can serve as a basis for excusing procedural default, *Sullivan v. United States*, 587 F. App'x 935, 942–45 (6th Cir. 2014), a petitioner attempting to rely on defective assistance to establish good cause

18

bears the burden of demonstrating constitutionally deficient performance. *Id.* For the reasons discussed above, the Court finds Petitioner did not receive ineffective assistance of appellate counsel and as a result, has failed to establish good cause for procedural default of Ground Four. *See Acevedo v. United States*, No. 1:10-CV-46, 2012 U.S. Dist. LEXIS 9817, at *19–20 (E.D. Tenn. Jan. 27, 2012) (finding Petitioner failed to establish cause for procedural default where he was unable to establish constitutionally deficient assistance on appeal). Even if he were able to establish good cause, Petitioner cannot show that an inability to raise the claims now would result in prejudice because the ground lacks merit. No law restricts admissible trial evidence to that previously raised in the context of a suppression hearing. *See United States v. Novene*, No. 1:97-CV-249, 2000 U.S. Dist. LEXIS 23287, at *12–13 (E.D. Tenn. June 22, 2000) (requiring "errors [be] . . . to the [Petitioner's] actual and substantial disadvantage").

### E.  Ground Five: Entitlement to Relief in Light of *Johnson v. United States*

Petitioner's final ground for collateral relief claims that *Johnson v. United States* removed his three prior aggravated burglary convictions from the ACCA's definition of "violent felony," precluding his continued categorization as an armed career criminal under 18 U.S.C. § 924(e) [Doc. 117; Doc. 118 pp. 3–7 (suggesting Tennessee aggravated burglary only qualifies as a predicate offense under the now-defunct residual clause)]. *Johnson* has no such effect.

A felon who possesses a firearm normally faces a maximum penalty of 10 years' imprisonment, 18 U.S.C. § 924(a)(2), and 3 years' supervised release, 18 U.S.C. § 3583(b)(2). However, if the felon possesses the firearm after having sustained three prior convictions "for a violent felony or serious drug offense, or both," the ACCA requires a 15 year minimum sentence, 18 U.S.C. § 924(e)(1), and increases the maximum supervised release term to 5 years, 18 U.S.C. § 3583(b)(1). The ACCA defines a "violent felony" as "any crime punishable by

19

imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. *Johnson* did not automatically invalidate all ACCA sentences, however, emphasizing that its holding "d[id] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.*; *see also United States v. Kemmerling*, 612 F. App'x 373, 375 (6th Cir. 2015) (explicitly finding that *Johnson* did not affect the ACCAs use-of-physical-force clause). Thus, under *Johnson*, an ACCA sentence only raises due process concerns—and is thus invalid—if it was necessarily based on predicate violent felonies that only qualified as such under the ACCA's residual clause. *Compare United States v. Ozier*, 796 F.3d 597, 603 (6th Cir. 2015) (finding district court did not err by categorizing defendant as an armed career criminal where all three predicate offenses qualified under the enumerated-offense and use-of-physical-force clauses of the ACCA), *with United States v. Bell*, 612 F. App'x 378, 379–380 (6th Cir. 2015) (finding *Johnson* precluded defendant from being sentenced as an armed career criminal because one of her three predicate offenses, aggravated assault, failed to qualify under the enumerated-offense and use-of-physical force clauses).

To determine whether a particular offense qualifies as a violent felony under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). A court does so by employing a

20

"categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted).

For purposes of a § 924(e) enhancement, the Supreme Court has defines "burglary" as any conviction, "regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Tennessee defines aggravated burglary as "burglary of a habitation," Tenn. Code Ann. § 39-14-403, meaning "any structure, including buildings, module unites, mobile homes, trailers, and tents, which are designed or adapted for the overnight accommodation of persons," Tenn. Code Ann. § 39-14-401. In *State v. Langford*, 994 S.W.2d 126 (Tenn. 1999), the Supreme Court of Tennessee explained that "[a]ggravated burglary occurs when an individual enters a habitation 'without the effective consent of the property owner' and intends to commit a felony." *Id.* at 127 (quoting Tenn. Code Ann. §§ 39-14-402, 403). The Sixth Circuit has repeatedly held Tenn. Code Ann. § 39-14-403 is entirely subsumed within *Taylor*'s definition of "generic burglary," meaning violation of the statute unconditionally constitutes "a violent felony for ACCA purposes." *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007); *see also United States v. Priddy*, No. 15-5136, 2015 U.S. App. LEXIS 21660, at *13 (6th Cir. Dec. 15, 2015) (same); *United States v. Bailey*, No. 14-6524, 2015 U.S. App. LEXIS 12325, at *8 (6th Cir. July 15, 2015) (same). Bound by this determination, the Court finds Petitioner's prior convictions were properly categorized as qualifying predicate offenses under the ACCA's enumerated-offense clause.

## IV.    CONCLUSION

For the reasons discussed above, Petitioner's § 2255 petition [Docs. 105, 118] will be **DISMISSED WITH PREJUDICE.**  The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**

_____ */s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE